MAHONING COUNTY BAR ASSOCIATION *v.* CREGAN.

[Cite as *Mahoning Cty. Bar Assn. v. Cregan* (1994), 69 Ohio St.3d 550.]

*Attorneys at law — Misconduct — Permanent disbarment — Conduct prejudicial to the administration of justice — Conduct adversely reflecting on fitness to practice law — Handling a legal matter without adequate preparation — Filing lawsuits merely to harass — Advancing claims unwarranted under existing law — Undignified and discourteous conduct before a tribunal.*

(No. 93-2181 — Submitted January 26, 1994 — Decided July 13, 1994.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 91-35.

On October 21, 1991 and May 14, 1993, relator, Mahoning County Bar Association, filed complaints against respondent, Lawrence V. Cregan of Youngstown, Ohio, Attorney Registration No. 0001226, with the Board of Commissioners on Grievances and Discipline. Cregan filed no answer to the second complaint. A panel of the board held a hearing on August 30, 1993; Cregan neither attended nor sent counsel to represent him.

This case is the sequel to *Mahoning Cty. Bar Assn. v. Cregan* (1992), 62 Ohio St.3d 444, 584 N.E.2d 656, in which we suspended Cregan for one year for violating DR 1-102(A)(5) (conduct prejudicial to administration of justice). There, we noted that "at times, respondent is completely out of control * * *" and that,

due to his mental condition, he "is not able to practice law at this time." In the instant case, the record shows an increasingly bizarre pattern of misconduct stemming from Cregan's mental instability.

Counts one through four involve Cregan's handling of a divorce action. Cregan's client testified that Cregan met with her several times before trial, but never discussed the facts of the case. However, he did imply that he could improperly influence the judge on his client's behalf.

The divorce action ultimately went to trial. Cregan's behavior during this thirteen-day trial caused the court to hold him in contempt at least twice. On the first day of trial, Cregan set the tone by calling the judge an alcoholic. Cregan said the judge "would be dead by the end of December," made similar comments to the bailiff, and pantomimed shooting the judge and bailiff with a roll of quarters. During a recess, he shoved another attorney. He also called his client's husband a "queer" and refused to shake his hand, saying: "[Y]ou may have AIDS."

During the trial Cregan made irrelevant comments about another lawsuit that was going to make him a millionaire, alternately berated and praised opposing counsel, and made a reference to the judge's ethnic origin. In closing argument, he stated that he was going to become a Catholic priest and have the Pope fired. However, in the entire fifteen-to-twenty-minute argument, he never discussed his client's case.

Relator also offered more prosaic examples of Cregan's neglect. In thirteen days of trial, Cregan never once came to court on time. He failed to file a post-trial brief as ordered by the court, and he never told his client that she had been granted a divorce.

Counts five through seven involved Cregan's harassment of Ohio Highway Patrol personnel. On March 10, 1991, a state trooper found a car abandoned at a crash site in Canfield Township; she had the car towed and held for investigation. On March 26, the car's owner transferred title to Cregan.

Cregan immediately called the Superintendent of the Highway Patrol to demand that the car be released to him, despite having already been told it was being held for investigation. In an obscenity-studded tirade, Cregan threatened to sue the Superintendent, get him fired, and beat him up. For good measure, he accused the Highway Patrol of accepting bribes from the towing company that was holding the car.

On March 28, 1991, Cregan filed suit against the Governor of Ohio, the Superintendent, the commander of the Highway Patrol's Canfield post, and the towing company's owner, seeking the return of the car or, in the alternative, $6,000. His complaint accused the Governor and other defendants of conspiring to defraud him of the wrecked car. The next day, the Canfield post commander told

Cregan that the car would be released to him, but Cregan replied: "I'm afraid you bought yourself a car, sir. * * * I'm not dropping the lawsuit."

Counts eight through twelve, nineteen, and twenty involve Cregan's harassment of "Jane Doe." On March 8, 1991, respondent left eight messages on Doe's answering machine without identifying himself. In one of these messages, Cregan said: "I just saw you drive down the street. Pretty as I remember. Pick up the phone. I know you're in your condo." Around 9:00 that night, Cregan rang Doe's doorbell several times. Cregan called Doe repeatedly at home and work. Doe also received six anonymous cards, some containing messages with sexual references.

Doe complained to Michael Keating, an administrator at Doe's workplace. Keating wrote respondent a letter warning him to leave Doe alone. A few days later, Cregan called Keating and claimed that Doe was "stalking" him. During this conversation, Cregan "got somewhat heated" and threatened Keating. Cregan then sued Doe, accusing her of, among other things, filing a false grievance against him with the bar association. In fact, Doe had never filed any such grievance, although she had reported Cregan to the Canfield police.

On April 5, 1991, Cregan sued the city of Canfield and its mayor and police chief. Cregan accused the defendants of violating his civil rights by withholding a requested police report; he claimed $200,000 actual damages and requested

$3,000,000 total damages. Cregan's complaint made some unusual allegations, such as calling one defendant a "pathological liar" and accusing the mayor's family of "practicing some sort of primo-genitre [*sic*] against plaintiff."

Counts fourteen through eighteen and twenty-one through forty-three charge Cregan with filing fifteen lawsuits against various people solely to harass or maliciously injure the defendants. Cregan has not denied that this was his purpose.

Counts forty-four and forty-five involve respondent's harassment of John Messer. Respondent made a series of telephone threats to Messer and his employer. When Messer went to the police, respondent filed yet another harassing lawsuit against Messer.

Count thirteen alleges that Cregan suffers a mental illness and should be suspended from the practice of law pursuant to Gov.Bar R. V. However, respondent refused to submit to a psychiatric examination pursuant to Gov.Bar R. V(7)(C). Although relator submitted other evidence, the panel did not find "that the Respondent was mentally ill within the definition of R.C. 5122.01(A)."

The panel found Cregan in violation of DR 1-102(A)(5) (conduct prejudicial to the administration of justice), 1-102(A)(6) (conduct adversely reflecting on fitness to practice law), 6-101(A)(2) (handling a legal matter without adequate preparation), 7-102(A)(1) (filing lawsuits merely to harass), 7-102(A)(2) (advancing claims unwarranted under existing law), and 7- 106(C)(6) (undignified

and discourteous conduct before a tribunal). The panel also noted that this court had suspended Cregan in a similar case, and that Cregan had done nothing to meet this court's conditions for reinstatement.

Nevertheless, the panel declined to recommend disbarment: "The Ohio Supreme [C]ourt will maintain some control over Respondent's conduct only so long as he remains admitted to the practice of law." Instead, the panel recommended that we suspend Cregan indefinitely and order him not to file *pro se* lawsuits without a judge's prior approval.

The board adopted the panel's findings of fact and conclusions of law but recommended disbarment "in view of [Cregan's] outrageous conduct, his history of disciplinary violations and the futility of using a disciplinary order such as that suggested by the panel in an attempt to control his behavior * * *."

_____

*Richard B. Blair* and *David C. Comstock, Jr.*, for relator.

*Lawrence V. Cregan, pro se.*

_____

*Per Curiam.* We concur in the findings and recommendation of the board. We cannot hope to "maintain some control over" Cregan by suspending him. We have already tried that. His conduct has shown that he is not amenable to that kind

of control. The task of controlling Cregan's behavior must now rest with the psychiatric profession and/or the police.

Accordingly, Lawrence V. Cregan is permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., and A.W. SWEENEY, DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., not participating.

————————